# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FINLAY INTERESTS 21, LTD. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV226 |
| | § | (Judge Schneider/Judge Bush) |
| CINCO CORPORATION | § | |
| | § | |
| V. | § | |
| | § | |
| FINLAY INTERESTS 21 LTD., ET AL. | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Before the Court is Cinco Corporation's ("Cinco") Motion for Summary Judgment against all adverse parties. Having considered the motion, Plaintiff's and Counter-Defendants' Response, and Cinco's Reply, the Court finds as follows.

### Facts

On or about May 8, 2002, Stearns National Bank (the "Bank") and the Finlay Interests 21, Ltd. ("Finlay") entered into a Construction Loan Agreement (the "Loan Agreement") pursuant to which the Bank loaned money to Finlay, as evidenced by a Promissory Note (the "Note") dated May 8, 2002, executed by Finlay and delivered to the Bank.

Under the terms of the Note, Finlay promised to pay the principal amount of $3,541,081.00, plus interest, on or before May 8, 2004. To secure payment of the Note, Finlay executed and delivered to the Bank a Deed of Trust, Security Agreement of Personal Property and Assignment of Rents (the "Deed of Trust"), dated May 8, 2002, creating a lien on certain real property located in Lamar County, Texas (the "Property").

The Deed of Trust was recorded in the Real Property Records of Lamar County, Texas.

Payment and performance of the borrower's obligations under the Note and the Deed of Trust are secured by a guarantee agreement dated May 8, 2002 executed by Finlay Interests GP 21, LLC, Finlay GP Holding, Ltd., Finlay Holdings, Inc., Finlay Properties, Inc. and Christopher C. Finlay (collectively, the "Guarantors"). The Bank and Finlay subsequently agreed to extend the Note's maturity date to September 8, 2004 under a Note Modification, executed by and between Borrower and Finlay. After executing the first modification, the Bank and Finlay agreed to further extend the maturity date of the Note to March 8, 2005 under a second Note Modification, executed by and between Finlay and the Bank. The Note matured on March 8, 2005, but has not been paid.

On April 26, 2005, the Bank assigned Cinco all of its right, title and interest in the Note, the Deed of Trust, the Guaranty and all other documents executed in connection with the loan. The Bank assignment and endorsement to Cinco is also evidenced by the endorsement to the Note, which is attached as an allonge to the Note. Cinco is now the owner, transferee and holder of the Note, the beneficiary under the Deed of Trust and the guarantee under the Guaranty.

On May 2, 2005, Cinco notified Finlay of its default under the Note and demanded payment of the amounts due thereunder. Finlay filed this lawsuit in state court, alleging that Cinco breached an oral agreement entered into by its predecessor in interest, Stearns National Bank, to grant a third extension of the Note. Cinco timely removed the case asserting diversity jurisdiction. After removal, Cinco asserted its counterclaim against Finlay and also sued all Guarantors for sums outstanding. Finlay has not made any further payments on the Note, except that it recently tendered a check in the amount of $33,358.56 pursuant to the assignment of rents agreement in the Deed of trust.

Finlay and the Guarantors owe Cinco the principal amount of $2,476,514.59, together with accrued unpaid interest thereon in the amount of $55,893.75 through August 29, 2005, which has and

will continue to accrue at the *per diem* rate of $447.15 until paid, plus late charges of at least $126,553.91.

### **Standard**

Summary Judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. When a defendant moves for summary judgment on its affirmative defense, it must show the absence of a genuine issue of material fact and establish each element of its defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994); *see also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2nd Cir. 1995). If the defendant meets its burden, the plaintiff must produce significant probative evidence demonstrating the existence of a triable issue of fact on at least one element of the defendant's defense. *Erby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995); *Kansa Reinsurrance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1371 (5th Cir. 1994). Similarly, when a defendant moves for summary judgment on the counterclaim, the defendant's burden is the same as for a plaintiff moving for summary judgment on its cause of action--the defendant must show there are no genuine issues of material fact and establish its counterclaim as a matter of law. *See Topalian v. Ehrman*, 954 F.2d 1125, 1137 (5th Cir. 1992). If the defendant meets its summary judgment burden on its counterclaim, the burden shifts to the plaintiff to produce evidence that could support a jury verdict in the plaintiff's favor. *Id.*

### **Analysis**

Finlay, by its affirmative defense, claims that there was an oral agreement to extend the loan on the payment of $25,000, made sometime in August 2004. Finlay also appears to argue that this agreement would continue notwithstanding the clear terms of the note and guarantee. This alleged extension predated the second written modification by two months. Cinco asserts that such an

agreement is barred by the statute of frauds. The Court agrees.[1]

The Note expressly provides that Minnesota law applies. Subdivision 2 of the Minnesota Credit Agreements Statutes states as follows:

> **Subd. 2. Credit Agreements to be in writing.** A debtor may not maintain an action on a credit agreement unless the agreement is *in writing*, expresses consideration, sets the relevant terms and conditions, and is *signed by the creditor and debtor*.

MINN. STAT. ANN. § 513.33 (West 2002). Subdivision 3 of the Credit Agreements Act further provides as follows:

> **Subd. 3. Actions not considered agreements.** (a) the following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision 2:
>
> \*\*\*\*\*
>
> (3) the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements.

*Id.* Minnesota courts have held that the Statute precludes breach of contract claims based on purported oral credit agreements. In *Carlson v. Estes*, 458 N.W.2d 123 (Minn. App. 1990), the court held that the plaintiff's claim that the bank had breached an oral agreement to reduce the interest rate on a loan was clearly a credit agreement within the definition of the statute, and therefore the court found that the plaintiff's claim was barred by the statute and was properly dismissed by the trial court. In *Becker v.*

---

[1] Finlay's evidence as to an extension, even though precluded by the statute of frauds, fails to establish a fact issue. A careful reading of the affidavits fails to establish an oral agreement. The Affidavit of Christopher Finlay states: "That [Christopher Finlay] specifically...asked Laubach if Finlay 21 would have to pay another such fee if the Loan Agreement needed another extension, and that Laubach said, no, Finlay 21 should not have to pay another fee, so long as it was current on interest payments." (Finlay Aff. at ¶ 8). This is not an agreement to extend the loan indefinitely, but only an agreement that Finlay would not have to pay another fee if the agreement was extended. The affidavit of Suzanne Hosch states that Laubach said that "if the loan needed a further extension, he could see no reason why the Bank would not grant the additional request to extend until the Loan Agreement permanent financing could be placed, as long as the interest was kept current." (Hosch Aff. at ¶ 6). This statement is neither a promise nor an extension of the loan term.

*First Am. State Bank of Redwood Falls*, 420 N.W.2d 239 (Minn. App. 1988), the court held that an alleged oral agreement by a bank that it would continue lending funds to customers constituted a credit agreement within the meaning of the statute requiring such agreements to be in writing, and therefore the trial court properly granted the bank summary judgment dismissing the action on the alleged oral credit agreement. In accordance with the Credit Agreements Statute, the alleged oral extension of the Note is unenforceable, and evidence of any such oral extension is inadmissible.

Cinco can and easily does meet the burden of proof as to recovery on the note. To recover under the Note, Cinco need only establish the validity of the signature on the Note and that Cinco is entitled to enforce the Note. *See* MINN. STAT. ANN. § 336.3-308. A "person entitled to enforce" an instrument means (1) the holder of the instrument, (2) a non-holder in possession of the instrument who has the right of a holder, or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 336.3-309 or 336.3-419(d). MINN. STAT. ANN. § 336.3-301 (West 2002). Finlay's admissions and the summary judgment evidence establish: (1) the Note; (2) that the borrower signed the Note; (3) that Cinco is the owner and holder of the Note; and (4) that Finlay is indebted to Cinco for the principal amount of $2,476,514.59 under the Note, together with accrued unpaid interest thereon in the amount of $55,893.75 through August 29, 2005, which has and will continue to accrue at the *per diem* rate of $447.15 until paid, plus late charges of at least $126,553.91.

Cinco is also entitled to summary judgment on its claim for foreclosure. To prevail on a motion for summary judgment in such a proceeding, a creditor is required to establish (1) the existence of a lien against the property securing payment of the indebtedness, (2) the debtor's failure to satisfy the obligation secured by the lien, and (3) that the creditor is entitled to a judgment on the debt and foreclosure of the lien against the property in satisfaction of the debt.

5

The Deed of Trust expressly provides that it creates a lien on the Property "to secure the payment, performance and observance by Finlay of all of the covenants and conditions in the Note and Loan Documents and any extensions or renewals thereof." Cinco has established that Finlay has failed to pay the outstanding balance of the Note secured by the Deed of Trust, and that Cinco is entitled to judgment on the Note. The Deed of Trust provides that Finlay's default in paying the Note entitles the beneficiary, now Cinco, without giving any notice or opportunity to cure, to proceed to immediately foreclose the Deed of Trust and to sell the property under the judgment or decree of a court of competent jurisdiction. Cinco is entitled to foreclose the lien created by the Deed of Trust in satisfaction of the amounts due and owing under the Note, which includes Cinco's attorneys' fees.

Cinco has presented a *prima facie* case for recovery on the Guaranty. To establish a *prima facie* case, Cinco has the burden to prove (1) a primary obligation or undertaking, (2) a collateral undertaking on the party of the guarantor, and (3) the default of the principal obligor. *Fidelity Bank & Trust Co. v. Fitzimons*, 261 N.W.2d 586, 590 (Minn. 1997). If a Plaintiff proves a *prima facie* case and it is unrebutted by the defendant, the Plaintiff has met its burden of proof. Here, the evidence conclusively proves each element: (1) Cinco's assignee, the Bank, advanced funds to Finlay in accordance with the Note; (2) the existence of the Guarantee and the Guarantor's promise to guarantee payment and performance of the Note; and (3) Finlay's default on the Note by failing to pay the balance of the Note at maturity.

Cinco is entitled to summary judgment on its claim against the Guarantors to recover the outstanding amounts due under the Note and the other Loan Documents. Accordingly, the Guarantors are jointly and severally liable to Cinco for the principal amount of $2,476,514.59 under the Note, together with accrued unpaid interest thereon in the amount of $55,893.75 through August 29, 2005,

which has and will continue to accrue at the *per diem* rate of $447.15 until paid, plus late charges of at least $126,553.91, attorneys' fees as incurred herein and on all subsequent appeals, and for the costs of collection and court.

Cinco is entitled to recover its reasonable and necessary attorneys' fees and the collection costs and expenses, which it incurred as a result of Finlay's nonpayment of the amounts owed on the Note. Cinco has incurred expenses and reasonable and necessary attorneys' fees through March 3, 2005 of $86,849.06 and is entitled to recovery. Cinco shall file an affidavit for all fees sought through the date of this report.

### **RECOMMENDATION**

Based upon the foregoing, it is the Court's recommendation that Cinco's Motion for Summary Judgment be, in all respects, GRANTED. The Court further recommends that all motions not previously ruled on be denied.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 13th day of February, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE